UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CONOPCO, INC. d/b/a GOOD HUMOR-<br>BREYERS ICE CREAM, | ) <br> ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-00813-JDT-TAB |
| | ) | |
| HEARTLAND PROCESSING, LLC, AND<br>G&G MARKETING SERVICES, LLC, | ) <br> ) | |
| | ) | |
| Appellees, | ) | |
| ———————————————— | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | Bankruptcy Case No. 01-4886-BHL-11 |
| HEARTLAND PROCESSING, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| HEARTLAND PROCESSING, LLC, and<br>G & G MARKETING SERVICES, LLC, | ) <br> ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 01-551 |
| | ) | |
| CONOPCO, INC., d/b/a GOOD HUMOR-<br>BREYERS ICE CREAM, MINSTER BANK,<br>FOREMOST FARMS USA<br>COOPERATIVE, DEAN MILK COMPANY,<br>and BREWSTER DAIRY, INC., | ) <br> ) <br> ) <br> ) <br> ) | |
| | ) | **Entry on Motion for Leave** |
| Defendants. | ) | **to Appeal (Doc. No. 1)** |

**Entry on Motion for Leave to Appeal (Doc. No. 1)**[1]

In this dispute involving a defunct milk products processor ("Heartland"),

Heartland's former lender ("Minster Bank"), and Heartland's former primary customer,

Conopco, Inc. d/b/a Good Humor-Breyers Ice Cream ("Breyers"), Breyers seeks leave,

pursuant to Federal Rules of Bankruptcy Procedure 8001 and 8003,[2] to appeal the

Bankruptcy Court's decision denying its motion for partial summary judgment against

Heartland.  Breyers acknowledges that this denial was an interlocutory order and

therefore ordinarily not immediately appealable, but asks the court to invoke the

doctrine of pendent appellate jurisdiction in order to review this denial in conjunction

with its consideration of Breyer's appeal from the entry of judgment on Minster Bank's

cross-claim against Breyers.  Before discussing the doctrine of pendent appellate

jurisdiction and its applicability (or lack thereof) to the case at hand, the court will

explain the relevant background of this case below.

## I.    Background

Sometime around 1999, G & G Marketing Services, LLC ("G & G"), Heartland

Processing, LLC, and Heartland Real Estate, LLC (collectively referred to herein as

---

[1]  This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

[2]  Rule 8001(b) allows for the appeal of "an interlocutory judgment, order, or decree of a bankruptcy judge as permitted by 28 U.S.C. § 158(a)(3)" and requires the appellant to file a motion for leave to appeal.  Rule 8003 prescribes the procedure for filing the motion for leave to appeal.  Section 158(a)(3) provides district courts with jurisdiction to hear appeals "with leave of the court, from other interlocutory orders and decrees" of bankruptcy courts.

"Heartland") sought funding from Minster Bank in order to establish a milk processing operation in Union City, Indiana. Heartland obtained a series of loans from Minster Bank totaling more than $3,000,000, and used these loans to acquire equipment and otherwise prepare the Union City plant for milk processing operations. As collateral for these loans, Heartland granted Minster Bank a security interest in all of its inventory, equipment, general intangibles, accounts, instruments, documents, chattel paper, and other rights to payment. Minster Bank perfected its security interest through the filing of UCC Financing Statements with the appropriate state offices.

In early 2000, with financing in place to facilitate the renovation of the Union City plant, Heartland entered into a Product Purchase Agreement ("PPA") with Breyers. Under the terms of the PPA, Heartland would process milk products (cream, condensed milk, etc.) at the Union City plant, and Breyers would then purchase these products from Heartland. The PPA allowed Breyers to direct raw milk from milk suppliers to Heartland, but it imposed no obligation on Breyers to pay suppliers for this raw milk. Although the court has little additional information regarding the terms of the PPA, the available information is nevertheless sufficient for purposes of the present motion.

Although the precise sequence of events is unclear, the seeds of the current dispute were planted sometime in late 2000, when Heartland ceased operations and Breyers refused to pay Heartland a sum of approximately $1.1 million, even though this amount was recorded both in Heartland's accounts receivable and Breyers' accounts payable. Breyers argues that, despite the record of the $1.1 million in its accounts payable, it had no obligation to pay this sum due to Heartland's breach of the PPA

3

through, among other things, failing to pay raw milk suppliers.  This alleged breach of the PPA by Heartland is at the core of Breyers' current motion for leave to appeal.

In late 2000, Heartland also defaulted on its loan repayment obligations to Minster Bank.  Minster Bank, aware of the approximately $1.1 million owing from Breyers, promptly acted to protect its security interest in Heartland's receivables; on December 18, 2000, Minster Bank notified Breyers, pursuant to Ind. Code § 26-1-9-502,[3] of Heartland's default and demanded full payment of the amount owed. Unsurprisingly, Breyers refused, believing that its contractual defenses against Heartland were also valid against Minster Bank, which had essentially stepped into Heartland's shoes.

Breyers was well aware of problems at Heartland prior to receipt of Minster Bank's notice, as one of Heartland's raw milk suppliers had already sued Breyers after Heartland failed to make payments to that supplier.  Sometime after receiving Minster Bank's notice on December 18, 2000, Breyers entered into settlement agreements with some of Heartland's raw milk suppliers, paying for the raw milk that had been processed by Heartland and delivered to Breyers in exchange for an assignment to Breyers of all the suppliers' claims against Heartland.

---

[3]  The Bankruptcy Court determined that the relevant events in this case transpired prior to Indiana's enactment of Revised Article 9 of the Uniform Commercial Code on July 1, 2001; therefore, this case is being decided under statutes that were in effect at that time but have since been repealed.

In late 2001, Heartland filed a bankruptcy petition and also filed a multi-count complaint against Breyers, alleging that Breyers had breached the PPA and performed other acts that precipitated Heartland's financial demise.  Breyers counterclaimed to recover amounts paid to Heartland's raw milk suppliers and asserted several defenses, including breach of contract, breach of fiduciary duty, indemnification, and setoff or recoupment.  Minster Bank, also a party to the litigation, filed a cross-claim against Breyers, seeking to recover (pursuant to its security interest in Heartland's receivables) the approximately $1.1 million owing from Breyers, as recorded in Heartland's accounts receivable.  Minster Bank takes the position that it is entitled to recover this amount free and clear of any defenses that Breyers may be able to assert against Heartland.

A series of summary judgment motions in the Bankruptcy Court, producing partial resolution of the parties' various claims, gave rise to the motion before this court.  The Bankruptcy Court denied both Heartland's and Breyers' cross-motions for summary judgment, finding that "[t]he legal issues are inextricably intertwined in a complex factual scenario which does not lend itself to summary disposition."  (Mot. Leave Appeal Ex. A at 3.)  However, the Bankruptcy Court granted Minster Bank's motion for summary judgment on its cross-claim against Breyers, agreeing with Minster Bank that it was entitled to recover the approximately $1.1 million free and clear of any defenses Breyer may have had against Heartland.  Although the Bankruptcy Court's grant of summary judgment in favor of Minster Bank appears to constitute an immediately appealable

judgment (the "Minster Bank Judgment"),[4] the denial of Breyers' summary judgment motion against Heartland is undisputedly interlocutory in nature and, therefore, not immediately appealable.  Breyers seeks leave to simultaneously appeal the denial of its summary judgment motion with its appeal of the Minster Bank Judgment.  Breyers argues that the court should exercise pendent appellate jurisdiction over the summary judgment denial, reasoning that the issues are so intertwined with the issues in its appeal of the Minster Bank Judgment that simultaneous consideration would greatly simplify resolution of the overall case and further judicial economy.  Heartland opposed this motion through a responsive brief, and Breyers replied.  Therefore, this motion is ripe for review, and the court now rules as follows.[5]

## II.    Discussion

Breyers' argument for the exercise of pendent appellate jurisdiction depends upon its contention that the issues in the summary judgment denial and the Minster Bank Judgment are inextricably intertwined.  The Seventh Circuit has described pendent appellate jurisdiction as a doctrine which allows an appellate court "to review

_____

[4]  The Bankruptcy Court's grant of summary judgment in favor of Minster Bank appears to have been final pending consideration of Heartland's motion to amend that judgment. However, for purposes of this motion, it makes no difference whether final judgment has been entered yet, because the court is only deciding whether, when appeal from that judgment is taken, pendent appellate jurisdiction should be simultaneously exercised over the interlocutory denial of Breyers' summary judgment motion.  The court's ruling will apply to the appeal from that judgment, whenever it actually becomes "final" for purposes of appeal.

[5]  Minster Bank recently filed its own motion (Case Number 1:07-cv-1572-DFH-JMS) for leave to appeal the Bankruptcy Court's decision in its Entry Interpreting and Enforcing Agreed Entry on Contingent Fee Arrangement as it Relates to Entry of Partial Summary Judgment in Favor of Minster Bank.  That motion is separate from and independent of the motion currently under consideration, and it requires no further discussion.

an otherwise unappealable interlocutory order if it is inextricably intertwined with an appealable one." *Montano v. City of Chi.*, 375 F.3d 593, 599 (7th Cir. 2004) (quoting *Jones v. InfoCure Corp.*, 310 F.3d 529, 536 (7th Cir. 2002)) (internal quotations omitted).  However, this doctrine should be invoked with caution; jurisdiction should only be extended to the interlocutory order if there are "compelling reasons for not deferring the appeal of the [interlocutory] order to the end of the lawsuit." *Montano*, 310 F.3d at 599 (quoting *U.S. for Use of Valders Stone & Marble, Inc. v. C-Way Constr. Co.*, 909 F.2d 259, 262 (7th Cir. 1990)) (internal quotations omitted); *see also Ill. ex rel. Hartigan v. Peters*, 861 F.2d 164, 166 (7th Cir. 1988) (noting that pendent appellate jurisdiction should be reserved for "exceptional" cases, not merely "normally unappealable interlocutory orders that happen to be related, even closely related, to the appealable order").  Narrow construction of the doctrine is essential in order to ensure that it does not "swallow up the final-judgment rule." *Patterson v. Portch*, 853 F.2d 1399, 1403 (7th Cir. 1988).  Therefore, it is not enough that the unappealable order and the appealable order are closely related; to justify the exercise of pendent appellate jurisdiction, "it must be practically indispensable that [the court] address the merits of the unappealable order in order to resolve the properly-taken appeal." *Montano*, 375 F.3d at 600 (quoting *Valders Stone & Marble*, 909 F.2d at 262) (internal quotations omitted); *see also Patterson*, 853 F.2d at 1403 ("We can review an unappealable order only if it is so entwined with an appealable one that separate consideration would involve sheer duplication of effort by the parties and this court.")

7

The decision on whether to exercise pendent appellate jurisdiction, then, requires careful consideration of the issues to be resolved in each appeal.  Breyers presents the following issues for consideration in its appeal of the Bankruptcy Court's denial of its summary judgment motion:  (1) whether Heartland must indemnify Breyers for payments made by Breyers to Heartland's suppliers; (2) whether Heartland, by failing to pay its suppliers, breached the PPA and/or its fiduciary duties to Breyers; (3) whether Breyers is entitled to a recoupment defense for the amounts it paid to Heartland's suppliers; and (4) whether Heartland's claim for lost profits should be denied as a matter of law.  On the first three issues, Breyers seeks damages of $2,056,759, and on the last issue, Breyers seeks a declaratory judgment that Heartland is not entitled to recover lost profits.  Breyers argues that these issues are intertwined with the following issues to be resolved in the appeal of the Minster Bank Judgment: (1) whether Breyers' claims against Heartland "arise out of" the PPA, and can therefore be interposed against Minster Bank; (2) whether Breyers' claims and defenses against Heartland accrued before Breyers received notice on December 18, 2000, that Minster Bank was taking over Heartland's accounts receivable; and (3) whether the "single integrated transaction" test on recoupment applies, precluding successful assertion of this defense by Breyers against Minster Bank.  Breyers also argues that the "lost profits" question is somehow related to the appeal from the Minster Bank Judgment, but fails to identify a particular issue with which this question is "inextricably intertwined."  Each of these issues will be examined below.

First, Breyers argues that the Bankruptcy Court erred in concluding that it could not assert its breach of contract and breach of fiduciary duty defenses against Minster Bank, and further contends that this conclusion is inextricably intertwined with the question of whether Breyers should actually prevail on these claims against Heartland. The former issue is immediately appealable as part of the Minster Bank Judgment, but the latter issue – the merits of Breyers' breach of contract/fiduciary duty claims against Heartland – is not immediately appealable.  The question for the court is whether resolution of the latter issue is somehow integral or essential to proper resolution of the former issue.

The Bankruptcy Court resolved the availability of these defenses to Breyers against Minster Bank by reference to Ind. Code § 26-1-9-318,[6] which was applicable at the time of the transaction between Heartland and Minster Bank.  Specifically, section 26-1-9-318(a)(1) provided that the rights of Minster Bank, as assignee of Heartland's claims against Breyers, are subject to "all the terms of the contract between the account debtor [Breyers] and assignor [Heartland] and any defense or claim arising therefrom." The Bankruptcy Court found that the PPA was the relevant contract between the account debtor (Breyers) and assignor (Heartland), but held that Breyers' defenses did not arise from the PPA, because any payments made by Breyers to Heartland's suppliers were not compelled by the PPA.

---

[6]  This is another statute that was in effect prior to Indiana's enactment of Revised Article 9 of the Uniform Commercial Code on July 1, 2001, but has since been repealed.

For purposes of this motion, the court need only determine whether the availability of Breyers' contractual defenses against Minster Bank and the merits of Breyers' breach of contract/fiduciary duty claims/defenses against Heartland are so "inextricably intertwined" as to justify the exercise of pendent appellate jurisdiction over the latter issue.  Although the two issues are undoubtedly closely factually related, both involving the terms of the PPA, neither issue's resolution is essential to resolution of the other.  On appeal from the Minster Bank Judgment, the court need only decide whether to affirm the Bankruptcy Court's determination that, as a matter of law, Breyers' breach of contract/fiduciary duty defenses do not arise from the PPA and may not be asserted against Minster Bank.  This question – whether, as a matter of law, Breyers' defenses do not arise from the PPA – is entirely distinct from the merits question; Breyers' defenses might arise from the PPA and nevertheless fail on the merits.  If any genuine issue of material fact exists regarding whether Breyers' defenses arise from the PPA, then the Minster Bank Judgment should be reversed, without any need to pass upon the merits of Breyers' defenses.  Because the two issues are distinct and can be decided independently, the exercise of pendent appellate jurisdiction would be inappropriate. *See, e.g.*, *InfoCure Corp.*, 310 F.3d at 537 (declining to exercise jurisdiction over transfer order where it was "quite distinct" from appealable preliminary injunction and where "[t]he two issues can be resolved without reference to each other"); *Valders Stone & Marble*, 909 F.2d at 262 ("Because we are able to extricate the issues raised by Selvick's properly-taken interlocutory appeal from the matters raised by the cross-appeal, we have no pendent appellate jurisdiction over Valders's cross-appeal."); *cf. Ill. ex rel. Hartigan*, 861 F.2d at 166 (exercising pendent appellate jurisdiction over

10

appointment of receiver because vacating immediately appealable preliminary injunction while letting receivership stand would render the successful appeal from the preliminary injunction pointless).

Breyers next argues that the Bankruptcy Court erred in concluding that it could not interpose against Minster Bank any of its defenses against Heartland because those defenses had not "accrued" for purposes of section 26-1-9-318(1)(b)[7] at the time that Minster Bank provided notice that it was taking over Heartland's accounts receivable on December 18, 2000.  Breyers contends that this issue is inextricably intertwined with the merits of its claims and defenses against Heartland for breach of contract, breach of fiduciary duty, indemnity, and setoff or recoupment.  According to Breyers, the court must evaluate the merits of these claims or defenses in order to determine whether they had "accrued" for purposes of Section 26-1-9-318(1)(b) prior to receipt of Minster Bank's notification; therefore, Breyers argues, the court should exercise pendent appellate jurisdiction to decide whether the Bankruptcy Court properly denied Breyers' motion for summary judgment on these claims.

Again, the question for the court is whether the two issues are so inextricably intertwined as to require simultaneous resolution.  On Breyers' appeal from the Minster Bank Judgment, the court need only decide whether, as a matter of law, none of

---

[7] This statute has also been repealed, but the Bankruptcy Court determined that it was in effect at the time of the transaction between Heartland and Minster Bank and therefore governs here.  Section 26-1-9-318(1)(b) provided that the rights of an assignee (here, Minster Bank) are subject to "[a]ny other defense or claim of the account debtor [Breyers] against the assignor [Heartland] which accrues before the account debtor receives notification of the assignment."

Breyers' defenses against Heartland had accrued prior to receipt of Minster Bank's notice; if a genuine issue of material fact exists regarding the accrual of a defense prior to receipt of this notice, then the court may reverse the grant of summary judgment without passing upon the merits of Breyers' claims against Heartland.  There is simply no need for the court to conclusively resolve the merits of Breyers' claims against Heartland in order to determine whether a genuine issue of material fact exists regarding the accrual of these defenses prior to receipt of Minster Bank's notice.  Therefore, it is not "practically indispensable that [the court] address the merits of the unappealable order in order to resolve the properly-taken appeal," *Montano*, 375 F.3d at 600 (internal quotations and citations omitted), and the exercise of pendent appellate jurisdiction would be improper.

Breyers next argues that the Bankruptcy Court erred in applying the "single integrated transaction" test to support its conclusion that Breyers could not assert a recoupment defense against Minster Bank; Breyers argues that this question is inextricably intertwined with the merits of Breyers' recoupment claim/defense against Heartland.  Again, the two issues, while undoubtedly closely factually related, are distinct.  On appeal from the Minster Bank Judgment, the court need only decide whether Minster Bank was entitled to summary judgment because the "single integrated transaction" test applied and precluded successful assertion of this defense by Breyers. Even if the court determines that this test should not have been applied or that application of the test does not necessarily preclude successful assertion of this defense by Breyers, the court need not decide the actual merits of the recoupment

12

claim/defense asserted by Breyers against Heartland.  Affirming or reversing the grant of summary judgment in favor of Minster Bank simply does not require the court to pass upon the merits of Breyers' motion for summary judgment on its recoupment claim against Heartland.  The severability of these issues precludes the exercise of pendent appellate jurisdiction.

Finally, Breyers argues that the court should also exercise pendent appellate jurisdiction over the denial of its summary judgment motion on the question of whether Heartland is entitled to seek lost profits from Breyers.  However, Breyers fails to identify any issue from the Minster Bank Judgment with which this issue is "inextricably intertwined," and instead vaguely suggests that this issue is "logically intertwined" as a general matter with the Minster Bank Judgment.  Although Breyers may very well be correct that resolution of this issue could "fundamentally alter the economics of the case" and significantly narrow the issues for trial, this is not a basis for the exercise of pendent appellate jurisdiction.

Breyers' attempt to analogize this case to *Greenwell v. Aztar Indiana Gaming Corp.*, 268 F.3d 486 (7th Cir. 2001), is fatally flawed.  In *Greenwell*, the court determined that dismissal of the defendant casino owner's indemnity claim against the third-party defendant doctors (which was immediately appealable because of the doctors' consequent dismissal from the suit) was "inextricably intertwined" with the dismissal of the plaintiff's negligence claim against the defendant casino owner (which was not immediately appealable because of plaintiff's other pending claims); if the plaintiff's negligence claim failed on the merits, then the indemnity claim would become

13

moot.  *See id.* at 489-91.  In short, resolution of the immediately appealable issue (dismissal of the defendant's indemnity claim against the third-party defendant doctors) depended, in part, upon the resolution of the issue that was not immediately appealable (dismissal of the plaintiff's negligence claim against the defendant), thereby justifying the exercise of pendent appellate jurisdiction.  *See id.* at 491.  No such direct dependency relationship exists in this case between the Minster Bank Judgment and the merits of Breyers' claims against Heartland.  For reasons already discussed, the court may affirm or reverse the grant of summary judgment in favor of Minster Bank without passing upon the merits of any Breyers' claims or defenses against Heartland. Moreover, unlike in *Aztar*, the court's resolution of the non-appealable interlocutory order (the Bankruptcy Court's denial of Breyers' summary judgment motion) is not likely to dispose of the immediately appealable order (the Minster Bank Judgment).  Thus, Breyers' analogy to *Greenwell* is unavailing.

Breyers has failed to demonstrate how any of the issues in its appeal from the Bankruptcy Court's denial of its summary judgment motion are "inextricably intertwined" with issues from the Minster Bank Judgment, thereby requiring the court to consider the appeal of the former order in order to properly resolve the appeal of the latter.  Although the issues in the two appeals are undoubtedly closely related, this is not enough to make this the sort of exceptional case in which the exercise of pendent appellate jurisdiction would be appropriate.  Because the issues in the two appeals are severable and can be decided independently, the court declines Breyers' request for leave to appeal the Bankruptcy Court's denial of its motion for summary judgment.

14

**III.     Conclusion**

For the foregoing reasons, Breyers' Motion for Leave to Appeal (Doc No. 1) is

**DENIED.**

ALL OF WHICH IS ENTERED this 21st day of December 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

| | |
|---|---|
| Magistrate Judge Tim A. Baker | Chief Judge Basil H. Lorch III |
| | |
| Alicia Mitchell Chandler | Michael Staudt |
| KRIEG DEVAULT | FAULKNER GARMHAUSEN KEISTER |
| achandler@kdlegal.com | & SHENK |
| | Courtview Center Ste. 300 |
| Ryan Michael Hurley | 100 S. Main Ave. |
| BAKER & DANIELS | Sidney, OH 46365-2727 |
| ryan.hurley@bakerd.com | |
| | |
| DANA M. LUNDBERG | Mark R. Wenzel |
| Baker & Daniels | KRIEG DEVAULT |
| 300 N. Meridian St., Ste.  2700 | mwenzel@kdlegal.com |
| Indianapolis, IN 46204 | |
| | |
| C. Daniel Motsinger | Joseph H. Yeager Jr |
| KRIEG DEVAULT, LLP | BAKER & DANIELS |
| cmotsinger@kdlegal.com | jhyeager@bakerd.com |
| | |
| Jennifer E. Riley | Thomas P. Yoder |
| RUBIN & LEVIN, PC | BARRETT & MCNAGNY LLP |
| jennifer@rubin-levin.net | tpy@barrettlaw.com |
| | |
| John M. Rogers | James E. Rossow Jr. |
| RUBIN & LEVIN PC | RUBIN & LEVIN, PC |
| johnr@rubin-levin.net | jim@rubin-levin.net |

15